UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GURPREET SINGH,

        Plaintiff,

   v.

MICHAEL MUKASEY,[1] *et. al.*,

        Defendants.

CASE NO. C07-1332 RSM

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND STAYING THE CASE

## I. INTRODUCTION

     This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. #8), and Defendants' cross-motion for summary judgment (Dkt. #10). Plaintiff argues that summary judgment is proper because Defendants have acted unreasonably in failing to adjudicate his naturalization application, which currently has been pending for approximately 18 months. Plaintiff further argues that the Court should find that Defendants are acting unreasonably and compel Defendants to adjudicate his naturalization application within 30 days. Defendants respond that the actions Plaintiff seeks to compel are not legally required to be concluded within any particular time frame. Defendants also respond that they are acting reasonably with respect to Plaintiff's application, and therefore also move for summary judgment and request dismissal of Plaintiff's complaint.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court shall substitute Alberto Gonzales, the originally-named Defendant, with recently appointed Attorney General Michael Mukasey.

MEMORANDUM ORDER
PAGE - 1

For the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, DENIES Defendants' cross-motion for summary judgment, and shall STAY the proceedings until December 1, 2008.

## II.  DISCUSSION

**A. Background**

The Immigration Act of 1990 dramatically changed immigration procedure.  The result: concentrated administration of immigration in the Executive Branch and dilution of Judicial oversight.  This unifying reorganization intended to streamline the process and thereby quicken application times.  Consistently, Congress also delineated several approximate time lines for the new process.  Generally, a decision in regards to immigration benefits should be forthcoming within 180 days.  8 U.S.C. § 1571.  More specifically, a decision in regards to naturalization should be forthcoming within 120 days of an examination.  8 U.S.C. § 1471(b).  Nonetheless, Congress never preached speed over caution.  Naturalization always requires a comprehensive background check prior to an examination.  8 C.F.R. § 335.2.

Naturalization constitutes a five step process: an application, a personal investigation, a criminal background check, an examination, and an oath taking.  *Sze v. Immigration and Naturalization Service*, 153 F.3d 1005, 1007 (9th Cir. 1998).  The length of this process depends heavily on the unique circumstances of each applicant and the ever changing priorities of the administrative agencies involved.  Regardless, Congress has suggested that once an applicant reaches the examination step a legal decision should be forthcoming in less than three months.  8 U.S.C. § 1447(b).

In this case, the plaintiff Gurpreet Singh ("Singh"), filed an N-400 application for naturalization on November 28, 2006.[2]  U.S. Citizenship and Immigration Services ("USCIS") provided a receipt of Singh's application and a prediction of an examination within 248 days.  Continuing with the process, Singh submitted to a fingerprint and a criminal background check

---

[2] Singh is currently a permanent resident and married to a naturalized citizen.  He can work lawfully in the United States and travel abroad without major restriction.  This status continues until May 20, 2011.

MEMORANDUM ORDER
PAGE - 2

in December 2006. Nine months after filling the N-400 application, approximately 270 days, Singh brought this action to compel his examination and thereby complete his naturalization. Singh has since filed for summary judgment as a matter of law.

On the other hand, Defendants allege that Singh has no clear right to relief and deny any unreasonable delay in adjudicating his application. Specifically, Defendants assert that necessity controls: FBI name checks are a necessary requirement of naturalization; these checks may necessarily take significant amounts of time post 9/11; and Congress has yet to demarcate a necessary time frame for these specific checks.

This Circuit has seen many cases addressing immigration applications and the question of reasonableness. This case is unique in two significant ways. First, Singh waited less than a year prior to filing his complaint. Second, Singh has not triggered the statutory provision that provides a three month timeline for an ultimate decision. 8 U.S.C. § 1447(b). As such, Singh's action rests solely on interpreting reasonableness under the Administrative Procedure Act ("APA") and the ability of the court to compel agency action under the Mandamus Act.[3]

### B. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party must demonstrate the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment.

---

[3] It is also noteworthy that on April 25, 2008, the Honorable Marsha J. Pechman certified a class of individuals who are all lawful permanent residents of the United States and have applied with USCIS to be naturalized. *See Roshandel v. Chertoof*, C07-1739MJP. All plaintiffs in that class allege delay in their pending naturalization applications like Singh has done here. However, Singh has made it clear in this case that he does not wish to participate in that class. (Dkt. #12 at 10).

*See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

A genuine factual issue arises when the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Conclusory or speculative testimony cannot raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Additionally, mandamus actions may be resolved through summary judgment. *See, e.g., Singh v. Still*, 470 F. Supp. 2d 1064, 1072 (N.D. Cal. 2006) (ruling in favor of plaintiff's motion for summary judgment to compel the government to adjudicate plaintiff's application with USCIS).

### C. Mandamus Provides the Legal Basis for this Motion

The Mandamus Act provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. In order to obtain relief under the Mandamus Act, a plaintiff must establish that: (1) his claim is "clear and certain"; (2) the duty owed is "ministerial and so plainly prescribed as to be free from doubt"; and (3) that no other adequate remedy is available. *Kildare v. Saenz,* 325 F.3d 1078, 1084 (9th Cir.2003); *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997).

The APA "authorizes suits by any person suffering legal wrong because of agency action." 5 U.S.C. § 702. Singh has based his mandamus action on Sections 555(b) and 706(1) of the APA. These sections require Singh to demonstrate that USCIS unreasonably delayed the processing of his application. *See* 5 U.S.C. § 555(b) (establishing that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); *see also* 5 U.S.C. § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably

MEMORANDUM ORDER
PAGE - 4

delayed"); *see also Yu v. Brown*, 36 F. Supp. 2d 922, 928 (D.N.M. 1999) (applying the same standards to assess the merits of claims of unreasonable agency delay that seek either mandamus or a mandatory injunction under the APA, or both).

Section 706 of the APA "leaves in the courts the discretion to decide whether agency delay is unreasonable." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999). The Ninth Circuit has adopted a six-factor test for determining when an agency delay is unreasonable under 5 U.S.C. § 706(1):

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting *Telecomms. Research & Action v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (six factors referred to as the *"TRAC* factors")).

The first TRAC factor requires an agency to govern decision-making with a "rule of reason." Defendants argue that USCIS is acting in accordance with a rule of reason. USCIS must wait for a full FBI criminal background check. Further, although contesting jurisdiction over the FBI, Defendants argue that the current FBI protocol is more than reasonable. Defendants claim that the FBI has an over abundance of these requests and no better method exists than its first in, first out policy. (Dkt. #10 at 6). Singh counters that making an applicant wait for thirteen months in the dark clearly violates Congress' own sense of reason and is per se

MEMORANDUM ORDER
PAGE - 5

unreasonable. *See* 8 U.S.C. § 1571(b) ("the processing of an immigration benefit application should be completed not later than 180 days after the initial filing.").

The second TRAC factor requires deference to a statutory or regulatory timetable. Defendants assert that this second factor does not apply. No timetable exists for the FBI to process a name check. No timetable exists for the USCIS to conduct an examination prior to the FBI name check. In fact, the opposite situation has presented itself – USCIS has a duty to wait for the FBI. Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997) (*reprinted in* Historical and Statutory Notes at 8 U.S.C. § 1446) (Dkt. #10 at 17). Singh concedes that no discrete statutory time frame exists, but still finds the ruse of over-worked agencies and heightened national security unavailing. (Dkt. #8 at 8). Singh takes a more functional approach relying on several inferences: the 3 month grace period to file applications, the 180 day sense of congress for immigration applications, the average processing time of 7 months for the Seattle Immigration office, and persuasive authority suggesting a two year wait is unreasonable. 8 U.S.C. § 1445(a); 8 U.S.C. § 1571; (Dkt. #8 at 11, 12).

The third TRAC factor provides that delays are less tolerable when affecting human health and welfare as opposed to economic harm. Defendants believe that the third and fifth factors work in conjunction and that both support their cause. The fifth factor concerns the nature and extent of the interests prejudiced by the delay. Defendants allege that if forced to balance the two interests, protecting United States national security certainly weighs heavier. Further, Defendants argue that the equities simply do not line up for Singh: he has a valid green card through May 2011; he can work and travel freely; and he suffers little to no hardship in this delay.

The fourth TRAC factor asks the court to consider the effect of expediting delayed agency action on other competing priorities. Defendants worry that a decision for Singh would significantly impinge upon the operations of USCIS and the FBI. They assert that a fixed waiting period would compromise not only agency discretion but the nation's safety. (Dkt. # 10 at 21). Delays in name checks occur for a variety of legitimate reasons. If change is

MEMORANDUM ORDER
PAGE - 6

desired, then the legislative process is where it should come from.  The Courts must be cautious in "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress".  *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 525 (1978).

The sixth and final TRAC factor states that a court need not find impropriety to hold that an agency action is unreasonable.  Here, the Court has received no allegations of bad faith.

### D. Plaintiff Cannot Prove That Defendants Have Acted Unreasonably

Overall, Singh's wait time fails unreasonable delay.  Singh cannot point to a single authority suggesting that a wait of less than two years is unreasonable.  (Dkt. #8 at 11).  Rather, Singh brazenly lists citation after citation to suggest that he, at thirteen months and not two years, has waited too long.  The facts control.  Singh has yet to pass the full criminal background check, has yet to sit for examination, and waited only 22 days after the expected time for notification to file this suit.  None of the cited authority by Singh shares all these elements and all of the cited authority share at least a two year wait.  As Congress expects, USCIS adjudicates the vast majority of naturalization applications in a timely manner.  8 U.S.C. § 1445(a); 8 U.S.C. § 1446(b); 8 U.S.C. § 1447(b); 8 U.S.C. § 1571.  Certain applications require more work than others due to a variety of accepted reasons.  (Dkt. #10 at 18).  The identification of people presents a difficult challenge, but name checks remain necessary.  This litigation acts as a case study.  Singh claims to be from Pakistan while Defendants claim he is from India.  (Dkt. #8 at 2); (Dkt. #10 at 2).

The equities also fail Singh.  He has valid permanent resident status for three more years.  (Dkt. #10 at 20).  In fact, Singh is arguably in a much better position than the precedent he cites.  *See Gelfer*, 2007 WL 902382, at *2 (holding that more than a two-year delay in an "adjustment of status" application was not reasonable as a matter of law).  The Court recognizes the importance of the right to vote, but also must consider this new right in relation to what Singh is asking – Judicial interference into Executive affairs.  (Dkt. #12 at 6).  Although mandamus allows one co-equal branch to compel another, this apparent authority

MEMORANDUM ORDER
PAGE - 7

should only be instigated in special circumstances. Defendants also mention the possibility of an expedited application. (Dkt. #10 at 20). This suggests that further administrative action might resolve this impasse and not this Court.

The Court recognizes the importance of national security and the difficulties vested in managing immigration in a post 9/11 world. (Dkt. #10 at 21). The Court also recognizes that no one is asking USCIS or the FBI to compromise their procedures. USCIS must process Singh's naturalization application, and the FBI must perform a full criminal background check prior to the application being accepted. Nevertheless, if a significant and unusual delay occurs, an applicant deserves a fairly transparent explanation as to why – not a veil of silence. Thus, the Court is equally sensitive to the fact that Singh is anxious to settle his affairs. But it appears that in this circuit, a two year wait for an FBI name check is unreasonable. Therefore at this point in time wherein Singh has been waiting for approximately 18 months, it seems inappropriate to compel USCIS, and specifically the FBI, to finish his criminal background check. Ultimately, the Court cannot hold at this time that Defendants have acted unreasonably.

However, the Court finds it unnecessary to dismiss this case. If Singh fails to receive a completed FBI name check at least two years after his initial application, the rationale behind this Court's finding that Defendants have thus far acted reasonably loses force. The Court will therefore retain jurisdiction over the action to ensure efficient resolution of any and all future disputes. *Cf. Huang v. Mukasey*, 2008 WL 628928 (W.D. Wash. March 4, 2008); *Singh v. Gonzales*, Case No. C06-500RSM (W.D. Wash. July 14, 2006); *Athwal v. Ashcroft*, Case No. 02-1423RSL (W.D. Wash. Dec. 10, 2002); *Tan v. INS*, Case No. 02-122RSL (W.D. Wash. July 29, 2002). As such, the Court will STAY the proceedings until December 1, 2008, approximately two years after Singh submitted his naturalization application.

### III. CONCLUSION

Having reviewed the relevant motions, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiff's motion for summary judgment (Dkt. #8) is DENIED.

MEMORANDUM ORDER
PAGE - 8

(2) Defendants' cross-motion for summary judgment (Dkt. #10) is DENIED. The Court finds that Defendants have not acted unreasonably in processing Plaintiff's naturalization application. However, the Court finds it unnecessary to dismiss Plaintiff's complaint for the reasons mentioned above. As a result, the Court shall STAY these proceedings until December 1, 2008. The parties are DIRECTED to submit a Joint Status Report on or before that date, informing the Court on the status of Plaintiff's application. Nothing in the language of this Order prevents either party from filing an additional dispositive motion if this case is not resolved by December 1, 2008.

(3) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 29th day of May, 2008.

[signature]

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE